COLORADO COURT OF APPEALS                                    **2017COA39**

Court of Appeals No. 14CA0245
Arapahoe County District Court No. 05CR1571
Honorable J. Mark Hannen, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Homaidan Al-Turki,

Defendant-Appellant.

ORDER AFFIRMED

Division IV
Opinion by JUDGE HAWTHORNE
Román, J., concurs
Harris, J., dissents

Announced April 6, 2017

Cynthia H. Coffman, Attorney General, Majid Yazdi, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Davis Graham & Stubbs, LLP, Michael J. Gallagher, Chad D. Williams, Kyle W.
Brenton, Denver, Colorado, for Defendant-Appellant

¶ 1     This case presents only one question: Is a defendant who is subject to section 18-1.3-406(1)(b), C.R.S. 2016, because he or she committed a crime of violence and a sex offense under the Colorado Sex Offender Lifetime Supervision Act of 1998 (LSA), §§ 18-1.3-1001 to -1012, C.R.S. 2016, eligible to have his or her sentence to the custody of the Department of Corrections for an indeterminate term of incarceration modified to probation under section 18-1.3-406(1)(a)?  Based on our supreme court's opinion in *Chavez v. People*, 2015 CO 62, we conclude that the answer to this question is no.  So, we affirm the district court's order denying defendant Homaidan Al-Turki's motion to reduce his sentence under Crim. P. 35(b).

I.     Procedural History

¶ 2     As relevant here, Al-Turki was convicted under the LSA of twelve counts of unlawful sexual contact through use of force, intimidation, or threat, a class 4 felony as defined by section 18-3-404(2)(b), C.R.S. 2016.  The district court ultimately sentenced him to indeterminate prison terms of six years to life on the unlawful sexual contact convictions.  The prosecution appealed this sentence

1

and a division of this court affirmed. *See People v. Al-Turki*, (Colo. App. No. 11CA1247, Aug. 9, 2012) (not published pursuant to C.A.R. 35(f)). Al-Turki renewed his previously filed Rule 35(b) motion for reduction of sentence, arguing that he was eligible for a probationary sentence under section 18-1.3-406(1)(a). After a three-day evidentiary hearing, the district court denied the motion, concluding that it did not have authority to modify Al-Turki's sentence because he was not eligible for probation under section 18-1.3-406(1)(a).

## II.     Sentence Modification

¶ 3     Al-Turki contends that he is eligible to have his indeterminate term of incarceration sentence, which was imposed under the LSA and the crime-of-violence statute, section 18-1.3-406(1)(b), modified to probation under section 18-1.3-406(1)(a). We disagree.

¶ 4     We review statutory interpretation questions de novo. *People v. Bohn*, 2015 COA 178, ¶ 9.

¶ 5     The mandatory sentencing for violent crimes statute, section 18-1.3-406(1), differentiates between crimes of violence that involve sex offenses and those that do not involve sex offenses. Section 18-1.3-406(1)(a) governs crimes of violence generally (i.e. non-sex

2

offenses), and allows the court to modify a sentence for a term of incarceration to probation in limited circumstances.  § 18-1.3-406(1)(a) ("[T]he court, in a case which it considers to be exceptional and to involve unusual and extenuating circumstances, may thereupon modify the sentence . . . [and] [s]uch modification may include probation if the person is otherwise eligible therefor.").

¶ 6      Section 18-1.3-406(1)(b) governs crimes of violence involving sex offenses and contains no similar "modification" language.  And, it provides that defendants convicted of a sex offense that is a crime of violence *shall* be sentenced to an indeterminate term of incarceration.  *Id.* ("Notwithstanding the provisions of paragraph (a) of this subsection (1), any person convicted of a sex offense, as defined in section 18-1.3-1003(5), committed on or after November 1, 1998, that constitutes a crime of violence shall be sentenced to the department of corrections for an indeterminate term of incarceration . . . .").

¶ 7      Al-Turki argues that his indeterminate term of incarceration sentence is governed by both section 18-1.3-406(1)(a) and (1)(b).  He reads section 18-1.3-406(1)(a) as governing all crimes of violence, even those that are sex offenses.  To do so, he interprets the phrase

3

in the first sentence of section 18-1.3-406(1)(b), "[n]otwithstanding the provisions of paragraph [(1)](a)," as meaning subsection (1)(b) is a limited exception to subsection (1)(a). He therefore reads section 18-1.3-406(1)(b) to only modify subsection (1)(a) where the two sections conflict, namely, as to the directive in subsection (1)(a) that the sentencing court impose a determinant aggravated sentence.

¶ 8    But, our supreme court, in *Chavez*, interpreted section 18-1.3-406(1)(b) and concluded that a crime-of-violence sex offender is not eligible for probation.[1] There, the defendant was convicted of a per se crime of violence sex offense that required the sentencing court to impose a sentence "in accordance with" the crime-of-violence scheme. § 18-3-405.3(4), C.R.S. 2016. The defendant argued that he was probation-eligible because he was subject to the LSA and it allowed for probation. *See* § 18-1.3-1004(2), C.R.S. 2016.

¶ 9    The supreme court held that the defendant was not probation-eligible because, even though he was subject to the LSA, which allows for probation, he was also subject to the mandatory

---

[1] In its opinion, the court quotes the "relevant part" of section 18-1.3-406(1)(b), C.R.S. 2016, without including the "notwithstanding" clause, and otherwise does not mention it. *Chavez v. People*, 2015 CO 62, ¶ 13.

crime-of-violence enhancement, and "[t]his forecloses probation." *Chavez*, ¶ 19. The court explained that the LSA required the defendant to serve an indeterminate sentence, the crime-of-violence statute required that he serve it in prison, and the LSA did not change that. *Id.* The court also explained that because the defendant "committed a crime of violence and a sex offense, [the defendant] is subject to section 406(1)(b), not the general, non-sex-offense section of 406(1)(a)." *Id.* at ¶ 20. It emphasized that section 18-1.3-406(1)(b) requires that defendants convicted of violent sexual offenses "*shall* be sentenced to the department of corrections for an indeterminate term of *incarceration*." *Id.* Thus, the defendant "[could] not be eligible for probation because 'incarceration' means 'imprisonment, confinement in a jail or penitentiary,' . . . and "'shall" indicates that [a] term is mandatory.'" *Id.* (citations omitted).

¶ 10 Like the defendant in *Chavez*, Al-Turki was convicted of a per se crime of violence sex offense that required the sentencing court to impose a sentence "in accordance with" the crime-of-violence scheme. § 18-3-405.3(4). He is subject to the LSA because he stands convicted of a sex offense committed after November 1,

5

1998. *See* §§ 18-1.3-1003(4), -1003(5)(a)(III)(A), -1012, C.R.S. 2016. And, because he committed a crime of violence and a sex offense, he is subject to section 18-1.3-406(1)(b), not the general, non-sex-offense section of 18-1.3-406(1)(a). *Chavez*, ¶ 20.

¶ 11 Because these circumstances are the same as the defendant's in *Chavez*, Al-Turki is foreclosed from probation and the provisions in section 18-1.3-406(1)(a) allowing the court to modify a determinate term of incarceration to probation are not available to him. *See id.* at ¶ 21 (concluding that, as to LSA sex offender defendant, "the crime-of-violence enhancement makes [defendant] ineligible for probation").

¶ 12 We recognize that Al-Turki's request to modify his original indeterminate term of incarceration to probation is different from the defendant's request in *Chavez* that he be sentenced initially to probation rather than an indeterminate term of incarceration. Nonetheless, our conclusion that *Chavez* mandates that Al-Turki is *ineligible* for probation is unaltered by this difference. The supreme court's sweeping and unqualified language in *Chavez* answers negatively the question whether a crime-of-violence sex offender's

mandatory sentence to an indeterminate term of incarceration can later be modified to probation.[2] *Id.*

¶ 13    The district court did not err in concluding that section 18-1.3-406(1)(b) precluded it from modifying Al-Turki's sentence to probation.

### III.    Conclusion

¶ 14    The district court's order is affirmed.

JUDGE ROMÁN concurs.

JUDGE HARRIS dissents.

---

[2] Despite the dissent's detailed and eloquent reasoning, we are "bound to follow supreme court precedent." *In re Estate of Ramstetter*, 2016 COA 81, ¶ 40 (quoting *People v. Gladney* 250 P.3d 762, 768 n.3 (Colo. App. 2010)).

JUDGE HARRIS, dissenting.

¶ 15    Defendant Homaidan Al-Turki raised two distinct claims on appeal. First, he contended that his convictions for unlawful sexual contact were not crimes of violence under the Colorado Sex Offender Lifetime Supervision Act of 1998 (LSA), §§ 18-1.3-1001 to -1012, C.R.S. 2016, and, therefore, he was eligible for an initial sentence to probation under the LSA, *see* § 18-1.3-1004(2)(a), C.R.S. 2016. Second, and in the alternative, he contended that, even if his convictions were per se crimes of violence that subjected him to sentencing under the crime of violence statute, section 18-1.3-406, C.R.S. 2016, the district court could modify his sentence of imprisonment to a probationary sentence. This was true, he argued, because the LSA did not change crime of violence sentencing for sex offenders other than to mandate indeterminate sentencing. Modification to probation was authorized for violent sex offenders prior to enactment of the LSA and, therefore, the modification continued to be authorized post-LSA.

¶ 16    During the pendency of the appeal, our supreme court issued its opinion in *Chavez v. People,* 2015 CO 62. *Chavez* forecloses Al-Turki's first argument, but it does not address the second. The

majority opinion carefully and persuasively explains why Al-Turki was not eligible for an initial sentence to probation under section 18-1.3-1004(2) or section 18-1.3-406.  But it then assumes, without additional argument or evidence, that the same reasoning supports the entirely separate conclusion that section 18-1.3-406 does not authorize a subsequent modification of Al-Turki's sentence below the aggravated range.  My examination of the language, history, and purpose of the statutes, as well as the relevant case law, leads me to the conclusion that the district court had the authority to modify Al-Turki's sentence, including a modification to probation.  Therefore, I must respectfully dissent.

## I.     Legal Background

¶ 17     An offense can qualify as a "crime of violence" in one of two ways.  Under section 18-1.3-406, a crime of violence is defined as any of the enumerated offenses during the commission of which the defendant used, or possessed and threatened the use of, a deadly weapon or caused serious bodily injury or death to a nonparticipant.  § 18-1.3-406(2)(a).  These crimes are sometimes referred to as "defined" crimes of violence.  *See Chavez*, ¶ 12.  In addition, some offenses (which may not necessarily meet the

9

statutory definition of a crime of violence) have been designated by the legislature as crimes of violence for sentencing purposes. The statutes defining these offenses direct the court to sentence the defendant "in accordance with the provisions of section 18-1.3-406." These crimes are referred to as "per se" crimes of violence. *People v. Banks*, 9 P.3d 1125, 1130 (Colo. 2000).

¶ 18    As the majority notes, Al-Turki was convicted of, among other offenses, twelve counts of unlawful sexual contact by force, in violation of section 18-3-404(2)(b), C.R.S. 2016. Unlawful sexual contact is ordinarily a class 1 misdemeanor, but when committed by the use of force, it is a class 4 felony sex offense and a "per se" crime of violence subject to aggravated sentencing under the crime of violence statute.

¶ 19    Prior to the enactment of the LSA in 1998, all crimes of violence (including sex offenses) were subject to enhanced sentencing under section 16-11-309(1)(a), the predecessor to section 18-1.3-406(1)(a). *See* Ch. 318, sec. 1, § 18-1.3-406, 2002 Colo. Sess. Laws 1403. Under this provision, the court was required to sentence any violent offender to a term of imprisonment of at least the midpoint in, but no more than twice the maximum of,

the presumptive sentencing range for the offense of conviction. § 16-11-309(1)(a), C.R.S. 1985. The same provision, however, authorized the trial court to modify any crime of violence sentence, even to the point of probation, upon a finding of unusual and extenuating circumstances. *Id.* Thus, while no violent offender was initially eligible for a probationary sentence under the statute, every violent offender who met the exceptional circumstances criteria was eligible for a subsequent modification of his sentence to a term below the aggravated range. *See People v. Beyer*, 793 P.2d 644, 646 (Colo. App. 1990) (the initial sentence for a crime of violence must be in the aggravated range but may be modified to a sentence of probation), *overruled on other grounds by Robles v. People*, 811 P.2d 804 (Colo. 1991).

¶ 20    The LSA was enacted with the goal of providing sex offenders with lifetime treatment and supervision. § 18-1.3-1001, C.R.S. 2016. To that end, the LSA requires that any defendant convicted of a sex offense be sentenced to an indeterminate term of imprisonment of at least the minimum of the presumptive range specified for that offense and a maximum of the sex offender's life,

11

*see* § 18-1.3-1004(1)(a), though some sex offenders are initially eligible for probation, *see* § 18-1.3-1004(2)(a).

¶ 21    The LSA includes its own provision for sex offenses that are defined crimes of violence. *See* § 18-1.3-1004(1)(b). But it does not separately address sentencing for sex offenses that are per se crimes of violence. Instead, the statutes defining those offenses continue to direct trial courts to sentence the defendant "in accordance with" the crime of violence statute. The crime of violence statute, however, did not provide for indeterminate sentencing, so in 1998, when the legislature enacted the LSA, it also amended the crime of violence statute to include a new section that directed the trial court to impose an aggravated indeterminate sentence for violent sex offenses. *See* Ch. 303, sec. 9, § 16-11-309, 1998 Colo. Sess. Laws 1291 (codified as amended at section 18-1.3-406(1)(b)).

¶ 22    In its current iteration, the crime of violence statute now provides, in relevant part:

> (1)(a) Any person convicted of a crime of violence shall be sentenced . . . to the department of corrections for a term of incarceration of at least the midpoint in, but not more than twice the maximum of, the

presumptive range provided for such offense . . . without suspension; except that, within ninety-one days after he or she has been placed in the custody of the department of corrections, the department shall transmit to the sentencing court a report on the evaluation and diagnosis of the violent offender, and the court, in a case which it considers to be exceptional and to involve unusual and extenuating circumstances, may thereupon modify the sentence, effective not earlier than one hundred nineteen days after his or her placement in the custody of the department. Such modification may include probation if the person is otherwise eligible therefor[1]. . . .

(b) Notwithstanding the provisions of paragraph (a) of this subsection (1), any person convicted of a sex offense, as defined in section 18-1.3-1003(5), committed on or after November 1, 1998, that constitutes a crime of violence shall be sentenced to the department of corrections for an indeterminate term of incarceration of at least the midpoint in the presumptive range specified in section 18-1.3-401(1)(a)(V)(A) up to a maximum of the person's natural life, as provided in section 18-1.3-1004(1).

§ 18-1.3-406(1)(a)-(b).

---

[1] A person is "eligible" for probation unless he has been convicted of a class 1 felony or a class 2 petty offense, § 18-1.3-201, C.R.S. 2016, or unless otherwise specifically precluded. *See, e.g.*, § 18-1.3-401(8)(d)(II), C.R.S. 2016 ("In no case shall any defendant" convicted of a class 2 or class 3 felony of child abuse "be eligible for suspension of sentence or for probation or deferred prosecution.").

¶ 23   Thus, the crime of violence statute now differentiates between violent sex offenses and non-sex-related violent offenses. *Hunsaker v. People*, 2015 CO 46, ¶ 24.

II.   *Chavez* Does Not Control the Outcome of This Case

¶ 24   Like Al-Turki, the defendant in *Chavez*, ¶ 16, was convicted of a sex offense that constituted a per se crime of violence. Under the LSA, a defendant is subject to crime of violence sentencing, and ineligible for an initial sentence of probation, only when he has been convicted of a defined crime of violence. § 18-1.3-1004(1)(b), (2)(a). Thus, Chavez argued — as Al-Turki did — that he was not subject to section 18-1.3-406 and, instead, the district court could have *initially* sentenced him to probation under section 18-1.3-1004(2). *Chavez*, ¶¶ 17, 19.

¶ 25   The supreme court rejected that argument, explaining that Chavez was subject to the crime of violence enhancement, not under section 18-1.3-1004(1)(b) of the LSA, but under the statute defining his offense, which mandated that he be sentenced "in accordance" with section 18-1.3-406. *Id.* at ¶ 16. And, like all violent offenders, violent sex offenders are not initially eligible for probation under section 18-1.3-406. *Id.* at ¶¶ 19-20. The supreme

14

court did not address whether the defendant's sentence could be subsequently modified to probation.

¶ 26     Still, the majority highlights two passages from *Chavez* that it says resolve the question. First, in responding to Chavez's argument that he was eligible for probation under the LSA, the court stated:

> Chavez, however, is not probation-eligible because he is also subject to the mandatory crime-of-violence enhancement. This forecloses probation. Put differently, the LSA requires that Chavez serve an indeterminate sentence. The crime-of-violence enhancement requires that he serve it in prison, and the LSA did not alter that.

*Id.* at ¶ 19 (citation omitted).

¶ 27     If probation was "foreclosed" for Chavez, the majority reasons, it must be "foreclosed" for Al-Turki, who was also convicted of a per se violent sex offense. But the cited language means only that, as a long-established matter, violent offenders — whether sex offenders or non-sex offenders — are precluded under section 18-1.3-406 from receiving an initial sentence to probation. As noted, prior to the LSA's adoption, the crime of violence statute required that "[a]ny person convicted of a crime of violence shall be sentenced . . . to a

15

term of incarceration . . . without suspension," but authorized a subsequent sentence modification to probation. § 16-11-309(1)(a), C.R.S. 1985.

¶ 28    The court's pronouncement that the mandatory crime of violence statute "forecloses probation" cannot signal some new, post-LSA rule prohibiting a modification to probation of a sex offender's sentence. If it did, the court would not have declared that "the LSA did not alter" the pre-LSA crime of violence sentencing rules.

¶ 29    Second, the majority points to the *Chavez* court's distinction between section 18-1.3-406(1)(a) and (1)(b), and its emphasis on incarceration as the required punishment:

> Because Chavez committed a crime of violence and a sex offense, he is subject to section 406(1)(b), not the general, non-sex-offense section of 406(1)(a). Section 406(1)(b) says defendants convicted of violent sexual offenses "*shall* be sentenced to the department of corrections for an indeterminate term of *incarceration* . . . ." Chavez cannot be eligible for probation because "incarceration" means "imprisonment, confinement in a jail or penitentiary," . . . and "'shall' indicates that a term is mandatory[.]"

*Id.* at ¶ 20 (citations omitted).

16

¶ 30    But here, too, the court is merely reciting the general rule that a violent sex offender, like any violent offender, is not eligible for an initial sentence to probation.  True, section 18-1.3-406(1)(b) requires that defendants convicted of violent sex offenses be sentenced to a term of incarceration, but so does section 18-1.3-406(1)(a), and it is undisputed that sentences imposed under section 18-1.3-406(1)(a) may be modified, including a modification to probation.  Thus, the distinction between section 18-1.3-406(1)(a) and (1)(b) could not have been determinative of the issue of probation eligibility.

¶ 31    Instead, in my view, the court distinguished between sections 18-1.3-406(1)(a) and (1)(b) to underscore that the legislature's addition of section 18-1.3-406(1)(b) in response to the enactment of the LSA did not alter the general rule that violent offenders are not initially eligible for probation.  *Beyer*, 793 P.2d at 646.  That is why the distinction is preceded by the language discussed above: "[T]he LSA requires that Chavez serve an indeterminate sentence.  The crime-of-violence enhancement requires that he serve it in prison, and the LSA did not alter that."  *Chavez*, ¶ 19 (citation omitted).

17

¶ 32    Thus, I agree with the majority that *Chavez* decided the following:

> (1) A defendant, like Al-Turki, who is convicted of a per se crime of violence is subject to the mandatory crime-of-violence enhancement in section 18-1.3-406(1)(b).
>
> (2) Section 18-1.3-406(1)(b) applies to violent sex offenders and mandates an enhanced indeterminate sentence.
>
> (3) Section 18-1.3-406(1)(b) forecloses an initial sentence to probation because (like section 18-1.3-406(1)(a)) it requires that the defendant be sentenced to the custody of the department of corrections for a term of incarceration.

¶ 33    But *Chavez* does not address, much less answer, the other question presented on appeal: even if Al-Turki was initially ineligible for probation under section 18-1.3-406(1)(b), did the district court have authority to modify his sentence under section 18-1.3-406(1)(a)?

III.    The District Court Had Authority to Modify Al-Turki's Sentence

¶ 34    To answer that question, I must examine section 18-1.3-406 and certain provisions of the LSA, and the interplay between those statutes. The goal of statutory interpretation is to discover and give effect to the legislative intent. *Vensor v. People*, 151 P.3d 1274, 1275 (Colo. 2007). If statutory language is clear, we apply its plain and ordinary meaning, but if the statute is ambiguous — meaning that it is reasonably susceptible to multiple interpretations — we determine the proper construction by examining the legislative intent, the circumstances surrounding its adoption, and the possible consequences of various constructions. *Hunsaker*, ¶ 11.

¶ 35    The district court deemed section 18-1.3-406(1)(b) unambiguous. Adopting the People's primary argument in opposition to Al-Turki's motion, the district court read section 18-1.3-406(1)(b)'s introductory phrase, "notwithstanding the provisions of paragraph (a) of this subsection (1)," to mean that no part of section 18-1.3-406(1)(a) applied to violent sex offenders sentenced under section 18-1.3-406(1)(b) and therefore a modification of the sentence to probation was impermissible.

¶ 36    But I read the term "notwithstanding" to mean that section 18-1.3-406(1)(b) overrides *conflicting* provisions of section 18-1.3-

406(1)(a). This appears to be the favored interpretation of a "notwithstanding" clause. *See, e.g.*, *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1083 (9th Cir. 2013) ("As a general matter, 'notwithstanding' clauses nullify *conflicting* provisions of law."); *Arias v. Superior Court*, 209 P.3d 923, 931 (Cal. 2009) ("notwithstanding" clause is "a 'term of art' . . . that declares the legislative intent to override all *contrary* law"; it does not render nonconflicting provisions inapplicable) (citation omitted); *Missouri ex rel. Mo. Pub. Serv. Comm'n v. Joyce*, 258 S.W.3d 58, 62 (Mo. 2008) ("notwithstanding" clause has the effect of "preventing a conflict from arising between two statutory sections"); *see also Zamarripa v. Q & T Foods Stores, Inc.*, 929 P.2d 1332, 1339 n.9 (Colo. 1997) ("notwithstanding" means "without prevention or obstruction from or by") (citation omitted). Thus, I construe the "notwithstanding" clause in section 18-1.3-406(1)(b) to override only the inconsistent part of section 18-1.3-406(1)(a) — the directive that trial courts impose a *determinative* aggravated sentence.[2]

---

[2] According to the People, even if the "notwithstanding" clause is interpreted to invalidate only conflicting provisions of section 18-1.3-406(1)(a), C.R.S. 2016, the result is the same "because

¶ 37   The People counter that if the "notwithstanding" clause were intended to carve out an exception to the statute limited to indeterminate sentencing for sex offenders, section 18-1.3-406(1)(b) would read: "Any person convicted of a sex offense . . . that constitutes a crime of violence shall be sentenced to the department of corrections . . . or to probation for an indeterminate term."  But that alternative language would not implement a limited carve-out for indeterminate sentencing; instead, it would permit an initial sentence to probation for a violent offender, something prohibited under both (1)(a) and (1)(b) of section 18-1.3-406.  So, the People's argument does not persuade me that I have misconstrued the "notwithstanding" clause.

¶ 38   Still, even assuming that my interpretation of the clause is not definitive, it is at least reasonable, and if one could sensibly credit both my reading and the district court's, then the statute is ambiguous.  *See Gibson v. Parish,* 360 F. App'x 974, 980 (10th Cir.

authorization of probation conflicts with mandatory prison sentence with no exceptions."  But that argument just begs the question of whether section 18-1.3-406(1)(a)'s exception to a mandatory prison sentence applies to all violent offenders, including violent sex offenders sentenced under section 18-1.3-406(1)(b).

2010) ("notwithstanding" clause was susceptible to more than one reasonable interpretation, rendering the statute ambiguous).

¶ 39   Relying on rules of statutory construction, I conclude that the pre-existing provisions of section 18-1.3-406(1)(a) that are not inconsistent with section 18-1.3-406(1)(b) apply equally to sex offenders sentenced under 18-1.3-406(1)(b).

¶ 40   First, as I noted earlier, section 18-1.3-406(1)(b) was added only to accommodate the LSA's new indeterminate sentencing scheme: after adoption of the LSA, offenders who committed non-sex-offense per se crimes of violence could continue to be sentenced under section 18-1.3-406(1)(a), but offenders who committed violent sex offenses had to be sentenced to aggravated indeterminate sentences, necessitating the amendment to the crime of violence statute.  The supreme court, though, has made clear that the LSA "was not intended to alter then-existing sentencing guidelines, other than to allow for lifetime supervision," *Hunsaker*, ¶ 24, particularly when it comes to sentencing for per se violent sex offenses, *see* *Chavez*, ¶ 21 (holding that sentencing for per se crimes of violence continues to be governed by section 18-1.3-406 because a contrary interpretation "would contravene the General Assembly's intent to

22

preserve the mandatory sentencing scheme for per se crimes of violence predating the LSA"). Thus, "[p]aragraph (1)(b) simply dictates that violent sex crimes, unlike violent crimes generally, are also subject to indeterminate life sentencing;" the inclusion of section 18-1.3-406(1)(b) does not demonstrate an intent by the General Assembly to otherwise change the sentencing scheme for violent sex offenders. *Hunsaker*, ¶ 27.

¶ 41    Prior to the LSA, all violent offenders were eligible for modification of their mandatory custodial sentences, including to probation. And because the LSA's "legislative declaration demonstrates a clear intent not to increase the punishment of sex offenders" with terms of incarceration "longer than those of other felons of the same class," *Vensor*, 151 P.3d at 1278, I conclude that the legislature intended to permit modification of a sex offender's sentence on the same terms as any other violent offender, except where specifically precluded.

¶ 42    Under the People's interpretation, section 18-1.3-406(1)(b) entirely disrupts the pre-existing process for sentence reductions. Their argument is that *no part* of section 18-1.3-406(1)(a) applies to offenders sentenced under 18-1.3-406(1)(b). That would mean that

offenders who committed per se violent sex offenses are not just ineligible for a modification to probation; they are categorically ineligible under Crim. P. 35(b) for any sentence reduction to a term below the aggravated range.

¶ 43     Rule 35(b) allows the district court to reconsider, in the interests of justice, the sentence previously imposed and, in its sound discretion, resentence the defendant to a lesser term "within the statutory limits." *People v. Smith*, 189 Colo. 50, 52, 536 P.2d 820, 822 (1975); *accord Beyer*, 793 P.2d at 646.  When a violent offender seeks relief under Rule 35(b), the court's authority to resentence him outside the statutory limits — to a term below the mandatory aggravated range — arises entirely from section 18-1.3-406(1)(a).  *Beyer*, 793 P.2d at 646.

¶ 44     Thus, under the People's construction, the addition of subsection (1)(b) to section 18-1.3-406 not only directed the imposition of aggravated indeterminate sentencing for violent sex offenders, it also eliminated any possibility under Rule 35(b) that a court could resentence those offenders outside the statutory aggravated range.  But given that implementation of the LSA was not intended to alter the existing sentencing rules, had the

legislature nonetheless intended to institute a sweeping change to the availability of sentence reductions for certain violent sex offenders, I believe that it would have done so explicitly.

¶ 45　　Indeed, as Al-Turki points out, when the legislature intends to preclude an otherwise available sentence, including a sentence to probation, it says so. *See, e.g.,* § 18-1.3-401(8)(d)(II), C.R.S. 2016 ("In no case shall any defendant" convicted of a class 2 or class 3 felony of child abuse "be eligible for suspension of sentence or for probation or deferred prosecution."); § 18-1.3-804(4), C.R.S. 2016 ("In no case shall any [habitual burglar] . . . be eligible for suspension of sentence or probation.").

¶ 46　　My conclusion that section 18-1.3-406(1)(b) was enacted for the limited purpose of instituting indeterminate aggravated sentencing for certain violent sex offenders is also supported by the LSA's sentencing scheme. As I have pointed out, the LSA includes its own provision regarding sentencing for defined crimes of violence, which tracks the mandatory sentencing language from section 18-1.3-406(1)(a):

> If the sex offender committed a sex offense that constitutes a crime of violence, as defined in section 18-1.3-406, the district court shall

> sentence the sex offender to the custody of the
> department for an indeterminate term of at
> least the midpoint in the presumptive range for
> the level of offense committed and a maximum
> of the sex offender's natural life.

§ 18-1.3-1004(1)(b). In contrast, the LSA does not have a provision that governs sentencing for per se crimes of violence. Even after much of the criminal code was reorganized and renumbered in 2002, the statutes defining per se violent sex offenses referred the trial court not to the LSA's own crime of violence sentencing provision, but to section 18-1.3-406. *See Chavez*, ¶ 18 (sentence of sex offender convicted of per se crime of violence was enhanced under section 18-1.3-406(1)(b), not section 18-1.3-1004(1)(b)).

¶ 47 Take, for example, the statute under which Al-Turki was convicted, section 18-3-404. That statute instructs that "[i]f a defendant is convicted of a class 4 felony of unlawful sexual contact . . ., the court shall sentence the defendant in accordance with the provisions of section 18-1.3-406." § 18-3-404(3). But sex offenders who commit per se crimes of violence are "[w]ithout question" subject "to the LSA," *Chavez*, ¶ 19, and, therefore, the legislature could have required district courts to use the LSA, and not section 18-1.3-406, to enhance those defendants' sentences by simply

26

instructing that they be sentenced "in accordance with section 18-1.3-1004(1)(b)."  Instead, the legislature made the choice — which I will assume was informed and deliberate, *see People v. Gookins*, 111 P.3d 525, 528 (Colo. App. 2004) (in construing statutes, courts presume that the legislature acted deliberately in its choice of statutory language) — to continue to direct courts to section 18-1.3-406 as the applicable enhancement provision, demonstrating its intent to maintain the sentencing status quo for sex offenders convicted of per se crimes of violence.[3]

¶ 48    The People argue that section 18-1.3-406(1)(b)'s reference to the LSA's general indeterminate sentencing provision, rather than

---

[3] Even if section 18-1.3-1004(1)(b), C.R.S. 2016, which applies to sex offenders who are convicted of "defined" crimes of violence, precludes a subsequent modification of the offender's sentence below the aggravated range — an issue I do not address — the prohibition does not undermine my conclusion that probation is nonetheless available to other violent sex offenders.  It makes sense that the legislature would treat sex offenders convicted of defined crimes of violence differently than sex offenders convicted of per se crimes of violence — the distinction "comports with the goals of the criminal law to separate more culpable from less culpable conduct." *People v. Banks*, 9 P.3d 1125, 1131 (Colo. 2000) (legislature acted reasonably in requiring extraordinary risk sentencing for defendants convicted of defined crimes of violence, but not per se crimes of violence, because defendants in the former category are more culpable than those in the latter category).

its probation provision, suggests an intent to preclude a sentence reduction to probation. Section 18-1.3-406(1)(b) calls for the imposition of an indeterminate term of imprisonment "up to a maximum of the person's natural life, *as provided in section 18-1.3-1004(1)*." (Emphasis added.) Section 18-1.3-1004(1) provides instructions for imposing an indeterminate prison sentence, while section 18-1.3-1004(2) authorizes an initial sentence to probation under certain circumstances. According to the People, if section 18-1.3-406(1)(b) authorized a modification of a sex offender's sentence to probation, the section would direct courts to sentence "as provided in section 18-1.3-1004(1) or 1004(2)."

¶ 49  But everyone agrees that section 18-1.3-406 precludes an initial sentence to probation. So of course section 18-1.3-406(1)(b) would not direct the district court to sentence a sex offender "as provided in section 18-1.3-1004(2)" — a section of the LSA that authorizes an initial sentence to probation — regardless whether section 18-1.3-406(1)(b) contemplated a later modification to probation.

¶ 50  Finally, in considering the consequences of a particular interpretation of section 18-1.3-406(1)(b), I note that the People's

construction of the statute would significantly limit the discretion of district courts to differentiate among offenders, a result we generally try to avoid. *Hunsaker*, ¶ 26; *Vensor*, 151 P.3d at 1278. Indeed, eliminating the possibility of a sentence modification below the mandatory aggravated range for every per se violent sex offender "is antithetical to the legislature's goal of increasing sentencing options in this context." *Hunsaker*, ¶ 26.

¶ 51    Although the language of section 18-1.3-406(1)(b) is not a model of clarity, I think the legislative intent is clear. And I am mindful of the well-settled principle that "[a] statute should not be construed in a manner which defeats the obvious legislative intent." *People v. Summers*, 208 P.3d 251, 254 (Colo. 2009) (citation omitted). I therefore conclude that the district court in this case had authority under section 18-1.3-406 to reduce Al-Turki's sentence below the statutory aggravated range, including to probation.

¶ 52    I do not mean to suggest, however, that a modification to probation would be warranted in this case. That is a determination for the district court. But based on my reading of section 18-1.3-406 and the LSA, I would reverse the judgment and remand the

case to permit the district court to decide Al-Turki's motion on the

merits.