COLORADO COURT OF APPEALS                                    **2017COA105**

Court of Appeals No. 14CA2242
Larimer County District Court No. 13CR1167
Honorable Julie K. Field, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Christopher Wesley Welborne,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE NAVARRO
Hawthorne and Dunn, JJ., concur

Announced August 10, 2017

Cynthia H. Coffman, Attorney General, Brock J. Swanson, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Nicole M. Mooney, Alternate Defense Counsel, Denver, Colorado, for Defendant-
Appellant

¶ 1     Defendant, Christopher Wesley Welborne, appeals the judgment of conviction entered on jury verdicts finding him guilty of first degree arson, criminal mischief, theft, and attempted theft.  We affirm.  In doing so, we hold — for the first time in a reported decision — that criminal mischief is not an included offense of first degree arson.  *See infra* Part V.

## I.     Factual and Procedural History

¶ 2     The prosecution alleged that Welborne and his mother, Kellie Lawson, set fire to the house in which they lived and then filed false insurance claims based on the fire.  Welborne and Lawson were tried together, and the prosecution presented evidence of the following.

¶ 3     Welborne rented a house with Lawson, his then girlfriend J.K., and other family members.  In April 2012, Welborne and Lawson purchased renters insurance and automobile insurance policies.  The renters insurance covered losses up to $350,000.  The insurance agent had never seen a renters policy with such high coverage.

¶ 4     In August 2012, the insurance company notified Welborne and Lawson that it did not plan to renew the renters policy upon

expiration in October 2012 because an adjustor had seen a large snake on the premises, contrary to a policy provision. The insurance agent was also suspicious of Welborne and Lawson due to the agent's past interactions with them,[1] and the agent asked a company underwriter if the company could cancel their policy before the expiration date. The agent told the underwriter he feared that, if the company did not cancel the policy, the "house is going to burn down." But the policy remained in place.

¶ 5    On August 27, 2012, the house in which Welborne and Lawson lived was set on fire. On that day, the occupants went on a picnic shortly before the fire started. Multiple sources of ignition were found, and all accidental causes were eliminated. Experts concluded that someone intentionally started the fire with an open-flame source that was removed from the scene when the fire started.

¶ 6    Before the day of the fire, Lawson said multiple times in front of many people that she wished the house would burn down so the family could start again. J.K. observed Lawson searching the

---

[1] We discuss some of these interactions in Part II of this opinion.

Internet to learn methods by which a fire could start in a home without someone being there.

¶ 7     Welborne used "pyroman876" as an online username and as part of his e-mail address, and he chose faces created out of flames for his profile picture on Facebook.  J.K. heard Welborne agree that burning down the house would be a good idea, and she heard him talking with Lawson about how a fire could be started by placing a scarf soaked in rubbing alcohol on an over-wattage bulb in a lamp.  J.K. was so concerned about those statements that she discussed them with her mother.  Her mother told J.K.'s sister about those concerns; after the fire, the sister advised authorities that the fire had been set intentionally.

¶ 8     Shortly after the fire, Welborne and Lawson filed an insurance claim based on allegedly destroyed personal items.  They created a 140-page list of over 2800 items, seeking reimbursement for $443,626.  An inventory of the house, however, revealed only 816 items, valued at $102,358.  For example, although Welborne claimed that the fire had destroyed an electric wheelchair, fire investigators found the chair in a neighbor's garage.  And

investigators could not find some allegedly burned computers; their remnants should have been in the house.

¶ 9     J.K. was with Welborne when he completed the insurance claim.  She saw him list items that he had never possessed or that had not been lost, including a laptop that he had actually taken to the picnic.  When she questioned him, he said that he deserved a new laptop.

¶ 10     After living with Welborne in a hotel for a few months, J.K. moved to California.  He visited her.  She advised him that, if he wished to salvage their relationship, he must list his lies to her.  On this list, Welborne admitted that he and his mother had set the fire.  He also admitted that earlier insurance claims had been fraudulent.  He then burned the list, telling J.K. that he would not let her use it as evidence against him.

¶ 11     Welborne claimed that the house had many electrical problems, but J.K. and the homeowner said they were aware only of a problem with a dimmer switch.  Investigators eliminated the electrical system as the cause of the fire.

¶ 12     Lawson also denied starting the fire.  She volunteered that she had spilled rubbing alcohol on her bedroom carpet, used rags to

clean it up, and thrown the rags in a corner by a lamp. The lamp had a 200-watt bulb, far exceeding the recommended maximum of 60 watts. But investigators eliminated the alcohol-soaked rags thrown on the base of the lamp as the fire's cause.

¶ 13 The fire caused $285,224 of damage to the house. Before ultimately denying their claim, the insurance company paid Welborne and Lawson $72,468 for temporary living expenses and for some of the allegedly lost personal items.

¶ 14 The jury convicted Welborne and Lawson as charged. The trial court sentenced Welborne to six years in prison for arson, six years for criminal mischief, six years for attempted theft, and eight years for theft — all to be served concurrently. He directly appeals the judgment. (Lawson is not a party to this appeal.)

## II. Earlier Insurance Claims

¶ 15 Welborne contends that the trial court erred by admitting evidence of his earlier insurance claims to the same company. He is mistaken.

### A. Relevant Factual and Procedural History

¶ 16 Around August 2011, Welborne and Lawson purchased insurance policies for multiple vehicles and a renters insurance

policy. Around December 2011, Welborne and Lawson filed an insurance claim alleging that many items had been stolen from their house. Police, however, could not find any signs of forced entry or any other evidence of a burglary. Welborne and Lawson could not provide receipts or other proof to support some claims. Lawson repeatedly increased the alleged value of the items taken each time she talked to the insurance agent. Still, the insurance company paid them approximately $30,000. Welborne told J.K. that the items had not been stolen and that he and Lawson had committed insurance fraud.

¶ 17 Later, the family's van was found crashed in a field with the keys in the ignition. Welborne and Lawson claimed that the van had been stolen, and they filed an insurance claim. According to the investigating officer, the van was worth $2324. Lawson asserted that the value should be increased because of recent work on the van, but she could not provide proof of such work. Yet, the insurance company paid them approximately $6000. Welborne told J.K. that the van had not been stolen and that he and Lawson had crashed it so they could get a new one.

¶ 18    In July 2012, Lawson asserted that the house had been burglarized again and the burglar had stolen a samurai sword. J.K., however, had never seen a sword in the house. Once again, police did not find signs of forced entry or other evidence of a burglary. The insurance agent advised Lawson that the insurance company would look hard at another questionable claim. Welborne and Lawson ultimately dropped this claim.

¶ 19    The prosecutor moved to admit evidence of these prior insurance claims under CRE 404(b) and as res gestae evidence. The prosecutor argued that this evidence showed motive or intent, lack of accident or mistake, and common plan and preparation. The trial court agreed and admitted the evidence at trial, with limiting instructions.

## B.    Standard of Review

¶ 20    A trial court has "substantial discretion when deciding whether to admit evidence of other acts." *People v. Jones*, 2013 CO 59, ¶ 11 (citation omitted). We will not disturb the court's ruling unless it is manifestly arbitrary, unreasonable, or unfair. *People v. Rath*, 44 P.3d 1033, 1043 (Colo. 2002). The parties agree that Welborne preserved this issue.

## C.    Analysis

¶ 21    Rule 404(b) provides that, although evidence of other acts is not admissible if its relevance depends entirely on the inference that the actor has a bad character and acted in conformity with that character, such evidence may be admissible for other purposes. *See* CRE 404(b) (listing, for example, proof of motive, intent, preparation, plan, and absence of mistake or accident); *see also Jones*, ¶ 12.  To assess whether evidence satisfies Rule 404(b), a trial court must apply the four-part test articulated in *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990).  This test allows admission of the evidence if (1) it relates to a material fact; (2) it is logically relevant to showing that fact; (3) the logical relevance is independent of the inference that the defendant committed the crime charged because of the likelihood that he acted in conformity with his bad character; and (4) the probative value is not substantially outweighed by the danger of unfair prejudice.  *Id.*; *see* CRE 403.

¶ 22    Welborne contends that the trial court abused its discretion because the evidence of his prior insurance claims did not relate to a material fact, was not logically relevant to the charges, and

8

therefore was not probative of anything other than to show his bad character. As to these first three *Spoto* prongs, he argues only that "[w]hether the defendants made false insurance claims [was] not material to whether the defendants intentionally set the fire" and "[n]one of the charges in this case were related to fraud."

¶ 23 We disagree because the attempted theft and theft charges were grounded in Welborne's false insurance claims following the fire. The prosecution had to prove that he knowingly took a substantial step toward obtaining and actually obtained insurance money *by deception*, and that he intended to permanently deprive the insurance company of the money. §§ 18-2-101(1), 18-4-401(1)(a), C.R.S. 2016. According to the prosecution, Welborne falsely claimed that certain personal property was destroyed in the fire in order to deceive the insurance company into paying him money under the renters policy.

¶ 24 So, the prior false insurance claims involving the same company related to a material fact and were logically relevant to the charges. *See Yusem v. People*, 210 P.3d 458, 464 (Colo. 2009) (recognizing that whether the defendant's actions were mistaken or purposeful was related to the defendant's mental state); *Rath*, 44

P.3d at 1043 (recognizing that other-act evidence shared common elements with charged offenses that tended to show the charged acts were "directed or purposive rather than coincidental"); *People v. Delgado*, 890 P.2d 141, 143 (Colo. App. 1994) (noting that a common plan can be shown by acts that have "a nexus or relationship with each other" and "it is not necessary that there be any substantial similarity between the acts").

¶ 25     For similar reasons, the other-act evidence had probative value outside of any improper inference. "Because all evidence of other bad acts could support a propensity inference, *Spoto* 'does not demand the absence of the inference' but 'merely requires that the proffered evidence be logically relevant independent of that inference.'" *People v. McBride*, 228 P.3d 216, 227 (Colo. App. 2009) (citation omitted). The evidence here was not relevant merely to prove Welborne's character but also to show a common plan and preparation, lack of accident or mistake, and his motive and intent. *See Rath*, 44 P.3d at 1041 ("The inference relied on arises not from the criminal character of the accused but from the demonstration of his pattern of using a particular technique to accomplish a particular end.").

¶ 26    As to *Spoto*'s fourth prong, because Rule 403 strongly favors the admission of relevant evidence, we must afford other-act evidence the maximum probative value attributable to it by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected. *Rath*, 44 P.3d at 1043. Evidence that strengthens the prosecution's case necessarily poses some disadvantage to the accused. *People v. Garner*, 806 P.2d 366, 375 (Colo. 1991). But unfair prejudice does not result from the evidence's legitimate probative force. *Rath*, 44 P.3d at 1043.

¶ 27    Evidence of Welborne's false but fruitful insurance claims was highly probative of whether he acted to deceive the same insurance company with the intent to permanently deprive it of money. And the trial court repeatedly instructed the jury on the limited purposes of the evidence, which mitigated the potential for unfair prejudice because we assume the jury heeded the instructions absent contrary signs. *People v. Garcia*, 2012 COA 79, ¶ 20.

¶ 28    As a result, the trial court did not abuse its broad discretion.

### III.    Welborne's California Theft Conviction

¶ 29    Welborne contends that the trial court committed reversible error by permitting the prosecutor to impeach him with his California theft conviction.  We disagree.

### A.    Relevant History

¶ 30    Welborne elected to testify at trial.  Before cross-examination, the prosecutor announced the intent to impeach Welborne with a California felony theft conviction, pursuant to section 13-90-101, C.R.S. 2016.  Defense counsel acknowledged that Welborne had been convicted of felony theft in California, but counsel provided documents showing that Welborne had successfully petitioned a California court to reduce the conviction to a misdemeanor pursuant to California law.  Defense counsel argued that the conviction could not be used to impeach Welborne because it was no longer a felony.

¶ 31    The trial court agreed that the conviction was no longer a felony.  Relying on *People v. Segovia*, 196 P.3d 1126, 1132 (Colo. 2008), however, the court found the conviction admissible to impeach Welborne's credibility under CRE 608(b) because theft is probative of truthfulness or dishonesty.

¶ 32    In front of the jury, the prosecutor asked Welborne one

question regarding the earlier offense: "And you have a prior

misdemeanor theft conviction in California, don't you?"  Welborne

answered, "Fourteen years ago."  The trial court instructed the jury

to consider this evidence only to assess Welborne's credibility.

### B.    Standard of Review

¶ 33    As noted, trial courts possess considerable discretion in

deciding evidentiary matters.  *Segovia,* 196 P.3d at 1129.  Because

Welborne objected to admission of the evidence on

non-constitutional grounds, we review the alleged error for

harmlessness.  *Yusem,* 210 P.3d at 469; *see also People v. Kraemer,*

795 P.2d 1371, 1377 (Colo. App. 1990) (analyzing erroneous

admission of CRE 608(b) evidence for harmlessness).

### C.    Analysis

¶ 34    Rule 608(b) permits cross-examination into specific instances

of conduct that are probative of a witness's character for

truthfulness or untruthfulness.  Only the underlying circumstances

surrounding the conduct — not the fact of a criminal conviction

itself — are admissible under the rule.  *See Segovia,* 196 P.3d at

1132; *People v. Drake*, 748 P.2d 1237, 1246 (Colo. 1988); *People v. Garcia*, 17 P.3d 820, 829 (Colo. App. 2000).

¶ 35    The trial court acted well within its discretion in admitting evidence of Welborne's prior theft offense under Rule 608(b) because "theft is probative of truthfulness or dishonesty." *Segovia*, 196 P.3d at 1132. Welborne asks us to "re-examine" the supreme court's holding in *Segovia*, but we lack such authority. *See People v. Al-Turki*, 2017 COA 39, ¶ 12 n.2. Also, contrary to his claim that the trial court admitted the evidence "carte blanche" (i.e., without recognizing its discretion to either admit or exclude the evidence), the court explicitly recognized its discretion to make this decision.

¶ 36    But Welborne is right that the trial court should not have permitted the prosecutor to elicit the fact of his conviction because only the facts underlying it were admissible. *See, e.g., Segovia*, 196 P.3d at 1132. No reasonable probability exists, however, that this error prejudiced him. As defense counsel recognized, the underlying facts of his California theft supported a conviction for a *felony* offense. The jury heard, however, only the fact of a misdemeanor conviction, not the facts of the felony-level offense. Hence, the jury received evidence less prejudicial to Welborne,

perhaps, than Rule 608 permits.  Further, the entire inquiry into the earlier offense was limited to a single question during a lengthy trial, and the court instructed the jury to consider the evidence for a limited purpose only.  Finally, the evidence of Welborne's guilt was profuse.

¶ 37    Consequently, the error in admitting the fact of the misdemeanor conviction was surely harmless.  *See People v. Casias*, 2012 COA 117, ¶ 68 (concluding that improperly admitted other-act evidence was harmless where it did not play a significant role in the case and the volume of properly admitted evidence dwarfed the improperly admitted evidence).[2]  Because the trial court's admission

---

[2] To the extent Welborne contends — for the first time on appeal — that the trial court's ruling burdened his "constitutional right to testify," we do not detect plain error.  The ruling did not preclude him from testifying, and he testified freely.  *See also People v. Henry*, 195 Colo. 309, 315, 578 P.2d 1041, 1045 (1978) (holding that permitting the prosecution to impeach a defendant with prior convictions does not impermissibly burden his right to testify).  Further, while Welborne notes that he was not expressly advised that he could be impeached under CRE 608(b) with the circumstances of a misdemeanor conviction, he does not assert that he would have made a different decision about whether to testify if he had been so advised.  *Cf. People v. Emert*, 240 P.3d 514, 518-19 (Colo. App. 2010) (recognizing that, when a defendant is misinformed by the trial court about the consequences of his decision to testify, he may obtain relief only if he demonstrates detrimental reliance on the misleading advisement).

of the evidence under CRE 608(b) does not require reversal, we need not address the People's argument that Welborne's California conviction remained a felony for purposes of section 13-90-101.

### IV. Welborne's Proposed Impeachment Witness

¶ 38 According to Welborne, the trial court erred by barring him from calling a witness, G.S., to impeach the testimony of J.K., his former girlfriend. The record does not reveal reversible error.

### A. Relevant Factual and Procedural History

¶ 39 The trial court ordered the parties to disclose witnesses well before trial. The defense did not disclose G.S.

¶ 40 During J.K.'s testimony, defense counsel did not ask her about G.S. Counsel did not object to releasing J.K. from her subpoena after her testimony, and she flew home to California the next day as planned.

¶ 41 Two days after J.K.'s testimony, defense counsel requested permission to call G.S. to impeach J.K. Counsel represented that G.S. had been present for the California meeting in which, according to J.K., Welborne had confessed to setting the fire. Counsel said that G.S. would testify "regarding what she observed at the meeting" as well as to "some things [J.K.] said." Counsel

explained that G.S. would not testify to "new unknown information" and that Welborne would "probably address the same items" in his testimony. Counsel conceded that he had not disclosed G.S. to the prosecution. He also admitted that he had received the prosecution's disclosures about J.K.'s testimony well before trial. While defense counsel suggested that the prosecution's latest synopsis of J.K.'s expected testimony (provided at the start of trial) "added additional information about" her, defense counsel did not identify any such new information.

¶ 42 The prosecutor objected, arguing that the endorsement was untimely, J.K.'s testimony had been known to the defense since the charges were filed, J.K. could not be recalled to respond to G.S.'s testimony because J.K. had left the state, and the prosecution could have extended J.K.'s stay if the defense had revealed G.S. earlier. The prosecutor also voiced concern that (1) G.S.'s testimony would be hearsay if she testified about conversations she had overheard between J.K. and Welborne; and (2) the defense had not laid a proper foundation to impeach J.K.'s testimony under section 16-10-201, C.R.S. 2016, or CRE 613. Defense counsel did not respond to these hearsay and foundational concerns.

17

¶ 43    The trial court decided that G.S. could not testify because the defense had not timely disclosed her per Crim. P. 16(II)(c) and the pretrial order, and the defense had not shown good cause for failing to disclose her earlier — especially given that the prosecution had disclosed J.K.'s testimony long before trial.  The court also expressed its "very serious concern" about whether G.S.'s testimony would be admissible in light of its apparent hearsay nature and the absence of a proper foundation.

## B.    Analysis

¶ 44    Welborne maintains that the trial court erred by excluding G.S.'s testimony because the defense did not violate any rule and the court did not adequately consider the factors outlined in *People v. Pronovost*, 773 P.2d 555 (Colo. 1989).  The People answer that Welborne did not provide an offer of proof sufficient to permit us to reverse the court's ruling.  The People are right.

¶ 45    Under CRE 103(a), "error may not be predicated upon a ruling that excludes evidence unless a substantial right of the proponent is affected and the substance of the evidence is made known to the court by offer of proof or is apparent from the context within which questions were asked." *People v. Saiz*, 32 P.3d 441, 446-47 (Colo.

2001). "This offer of proof must demonstrate that evidence is admissible as well as relevant to the issues in the case." *Melton v. Larrabee*, 832 P.2d 1069, 1071 (Colo. App. 1992). "The offer must sufficiently apprise the trial court of the nature and substance of the testimony to enable it to exercise its discretion pursuant to the rules of evidence, and it must establish a basis in the record for appellate review of the trial court's ultimate ruling." *Saiz*, 32 P.3d at 447.

¶ 46    Defense counsel, despite the trial court's requests for more detail, offered only that G.S. was present during the California meeting between J.K. and Welborne and that G.S. would "impeach some of the testimony put forth by J.K." Counsel did not identify which parts of J.K.'s testimony G.S. would impeach. For instance, counsel did not assert that G.S. would contradict J.K.'s testimony that Welborne had confessed to setting the fire or to filing false insurance claims. Nor did defense counsel explain how the defense could overcome the hearsay and foundational concerns flagged by the prosecutor and shared by the court. Instead, defense counsel said that G.S.'s testimony would be cumulative of Welborne's expected testimony (although counsel did not elaborate).

¶ 47    Arguably, this offer of proof was so limited as to justify the trial court's ruling on the basis that the offer did not satisfy CRE 103(a)(2) (i.e., the substance of the evidence was not adequately made known to the court).  In any event, the sparse offer of proof does not show that the court's ruling affected a "substantial right of [a] party."  CRE 103(a); *see Saiz*, 32 P.3d at 447-48 (concluding that the trial court properly excluded videotaped statement where the offer of proof was relatively limited in nature, solely for impeachment, and not alleged to be different or more probative than other related testimony); *id.* at 448 ("A trial court also cannot be considered to have abused its discretion in excluding logically relevant evidence as needlessly cumulative unless its decision, under the circumstances, was manifestly arbitrary, unreasonable, or unfair."); *cf. People v. Brown*, 2014 COA 155M-2, ¶ 6 ("[A] defendant's right to present a defense is violated 'only where the defendant was denied virtually his only means of effectively testing significant prosecution evidence.'") (alteration and citation omitted).  For the same reason, we cannot conclude that the court's ruling prejudiced Welborne even if we assume (without deciding) that constitutional harmless error analysis applies.  *See Hagos v. People*,

2012 CO 63, ¶ 11 (describing review of errors of constitutional dimension).

¶ 48     As discussed, the offer of proof did not show that G.S.'s testimony was admissible or that she would impeach J.K.'s testimony that Welborne had confessed to starting the fire. *See Saiz*, 32 P.3d at 449 (explaining that, where "the defense never specified the statements that would appear on the tape or asked the court to view the videotape," excluding the tape did not prejudice the defendant's constitutional rights). And Welborne himself later contradicted J.K.'s account. *See People v. Hoover*, 165 P.3d 784, 796 (Colo. App. 2006) (finding the erroneous exclusion of state-of-mind evidence to be harmless where the record showed that the defendant was able to provide substantial testimony concerning his state of mind); *cf. Vega v. People*, 893 P.2d 107, 120 (Colo. 1995) (holding constitutional error in precluding cross-examination into incentive program for Drug Enforcement Administration agents was harmless beyond a reasonable doubt where other evidence revealed the agents' bias toward obtaining convictions for drug-related offenses).

¶ 49    Finally, the evidence of Welborne's guilt was abundant. Indeed, J.K. testified to Welborne's inculpatory conversations that G.S. could not have overheard (e.g., those between Welborne and Lawson about how to set a house fire).  For all these reasons, any error was harmless beyond a reasonable doubt.

## V.    Merger

¶ 50    Welborne contends that criminal mischief is an included offense of first degree arson and, therefore, those convictions must merge.  His contention finds support in *People v. Abeyta*, 541 P.2d 333, 335 (Colo. App. 1975) (not published pursuant to C.A.R. 35(f)). We decline to apply *Abeyta*, however, because it conflicts with both the controlling law at the time it was issued and the supreme court's recent clarification of the applicable test for evaluating when one offense is included in another.  *See Reyna-Abarca v. People*, 2017 CO 15, ¶¶ 59-66.  Welborne's claim fails the governing test.

### A.    Standard of Review

¶ 51    We review de novo a claim that a conviction violates the constitutional prohibition against double jeopardy.  *People v. McMinn*, 2013 COA 94, ¶ 18.  Because Welborne did not preserve

this issue, we may reverse only if plain error occurred. *Reyna-Abarca*, ¶ 2; *People v. Morales*, 2014 COA 129, ¶¶ 46-47.

## B. Analysis

¶ 52   If one offense is included in another offense, a defendant may not be convicted of both. § 18-1-408(1)(a), C.R.S. 2016. As pertinent here, one offense is included in another offense charged when "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged." § 18-1-408(5)(a); *Reyna-Abarca*, ¶ 51. Our supreme court has consistently held that this statute requires a "statutory elements" or "strict elements" test, under which we compare the elements of the two criminal statutes rather than the specific evidence used to sustain the charges. *Reyna-Abarca*, ¶ 53; *People v. Rivera*, 186 Colo. 24, 27-28, 525 P.2d 431, 433-34 (1974).

¶ 53   As charged here, first degree arson requires proof that the defendant (1) knowingly; (2) set fire to, burned, or caused to be burned; (3) any building or occupied structure; (4) of another; (5) without that person's consent. § 18-4-102(1), C.R.S. 2016; *cf.* COLJI-Crim. 4-1:01 (2016). As charged here, criminal mischief requires proof that the defendant (1) knowingly; (2) damaged; (3) the

real or personal property; (4) of one or more other persons,
including property owned by the defendant jointly with another
person or property owned by the defendant in which, at the time of
the damage, another person had a possessory or propriety interest;
(5) in the course of a single criminal episode.  § 18-4-501(1), C.R.S.
2016; § 18-4-501(1), C.R.S. 2012; *cf.* COLJI-Crim. 4-5:01 (2016).[3]

## 1.    Before *Reyna-Abarca*

¶ 54    In *Abeyta*, 541 P.2d at 335, the division opined that criminal
mischief is a lesser included offense of first degree arson.  Other
than the requisite mental state, the statutory elements of both
offenses then were substantially the same as those in 2012 and
2016.  *See id.* (stating that both 1973 statutes required mental state
of "intentionally").  Citing *Rivera*'s statutory elements test, the
*Abeyta* division decided, with little discussion, that "the essential
elements of [criminal mischief] are necessarily proven if the
elements of [first degree arson] are present." *Id.*

---

[3] The 2016 statute differs somewhat from the 2012 version in effect
at the time of Welborne's offenses, but not as to the elements set
forth above.  The 2016 version restructures and revises the
aggregate damage amounts relevant to enhancing criminal mischief
from a misdemeanor to a felony.  *See* § 18-4-501(4), C.R.S. 2016.

¶ 55    The *Abeyta* division was mistaken because criminal mischief

required an element that first degree arson did not.  As it did in

2012 and does today, the criminal mischief statute in *Abeyta*

applied only if the charged acts occurred "in the course of a single

criminal episode."  *Id.* (quoting section 18-4-501, C.R.S. 1973); *see*

*People v. Thoro Prods. Co.*, 45 P.3d 737, 745 (Colo. App. 2001)

(describing the "single criminal episode" language of section

18-4-501 as an element of the offense), *aff'd*, 70 P.3d 1188 (Colo.

2003).  In other words, the criminal mischief statute has always

required proof that the defendant committed the acts in the course

of a single criminal episode.  *See also* COLJI-Crim. 4-5:01 cmt. 3

(2016) (explaining that *Thoro Products* recognized "the 'single

criminal episode' language of section 18-4-501 as establishing an

*element* of the offense").[4]  The first degree arson statute has never

set forth such an element.

---

[4] The 2016 model instructions had not been issued at the time of
Welborne's offenses.  Still, those instructions are informative
because they interpret relevant statutory language that was in effect
at the time of his offenses.  *See* § 18-4-501(1), C.R.S. 2012; *People
v. Morales*, 2014 COA 129, ¶ 42 (recognizing that model
instructions, while not binding, are intended as guidelines and
should be considered by courts); *People v. Romero*, 197 P.3d 302,
309 (Colo. App. 2008) (Pattern jury instructions "carry weight and

¶ 56     Accordingly, *Abeyta* was wrongly decided at the time.

## 2.     After *Reyna-Abarca*

¶ 57     Under the supreme court's new formulation in *Reyna-Abarca*, ¶ 64, "an offense is a lesser included offense of another offense if the elements of the lesser offense are a subset of the elements of the greater offense, such that the lesser offense contains only elements that are also included in the elements of the greater offense."  We asked the parties to brief *Reyna-Abarca*'s effect on *Abeyta*.

¶ 58     Welborne, noting that *Reyna-Abarca* did not expressly overrule *Abeyta* and arguing that the cases apply the same strict elements test, contends that *Reyna-Abarca* does not contradict *Abeyta*.  True, the *Reyna-Abarca* court did not mention *Abeyta*.  Even so, the reasoning of *Reyna-Abarca* confirms that *Abeyta* was wrong.

¶ 59     Just as under the former test, under the *Reyna-Abarca* test "one offense is not a lesser included offense of another if the lesser offense requires an element not required for the greater offense."  *Id.* at ¶ 60 (discussing *Schmuck v. United States*, 489 U.S. 705 (1989), from which the *Reyna-Abarca* court fashioned its new test).

---

should be considered by the court." (citing *People v. Armstrong*, 720 P.2d 165, 168 (Colo. 1986))).

Because criminal mischief requires proof that the acts were committed in a single criminal episode — while first degree arson does not — criminal mischief is not an included offense of first degree arson under the *Reyna-Abarca* analysis.[5]

¶ 60 We are not persuaded otherwise by Welborne's claim that criminal mischief is "necessarily included" in first degree arson because "it is impossible to commit first degree arson without also committing criminal mischief." In *Reyna-Abarca,* ¶¶ 65-67, the court rejected such a test for identifying an included offense when the court disavowed *Meads v. People*, 78 P.3d 290 (Colo. 2003). *Meads* had applied the following test: if proof of facts establishing the statutory elements of the greater offense necessarily establishes all the elements of the lesser offense, the lesser offense is included. *See Reyna-Abarca,* ¶ 65. The *Reyna-Abarca* court abandoned that former test and acknowledged that "the result in *Meads* would have

---

[5] Because we must apply the strict elements test (rather than an evidentiary test), we are loath to look beyond the elements expressed in the first degree arson statute by theorizing that a "single criminal episode" element is necessarily implicit in the first degree arson offense. *Cf. People v. Leske,* 957 P.2d 1030, 1036-40 (Colo. 1998) (rejecting the claim that the age disparity element of the sexual assault on a child offense is "jurisdictionally implicit" in the position of trust offense).

27

been different" under the new "clarified version of the strict elements test." *Id.* at ¶ 67.

¶ 61    Indeed, the result in *Reyna-Abarca* would have been different under the version of the strict elements test used in *Meads* and advocated by Welborne. *Reyna-Abarca* considered, among other things, whether "DUI" is a lesser included offense of "vehicular assault-DUI." *Id.* at ¶ 1. Because vehicular assault-DUI can be committed with a boat or a plane, whereas DUI can be committed only in a self-propelled vehicle that is designed primarily for travel on the public highways, it is possible to commit vehicular assault-DUI without also committing DUI. *Id.* at ¶ 75. Under *Meads* and Welborne's approach, therefore, DUI would not be a lesser included offense of vehicular assault-DUI because proof of vehicular assault-DUI does not *necessarily* establish all the elements of DUI. *See Meads*, 78 P.3d at 295-96 (holding that, because the element of obtaining or exercising control over anything of value does not necessarily establish the element of obtaining or exercising control over a motor vehicle, second degree aggravated motor vehicle theft is not a lesser included offense of felony theft). But *Reyna-Abarca*

rebuffed that analysis and conclusion under its new test. *Id.* at

¶¶ 76-78. Likewise, we must reject Welborne's contention.[6]

## VI. Conclusion

¶ 62    The judgment is affirmed.

JUDGE HAWTHORNE and JUDGE DUNN concur.

---

[6] Given our disposition, we need not address the People's other arguments as to why criminal mischief is not included in first degree arson.